MARY E. DITCHETT, Administratrix, etc., Respondent, *v.* THE
SPUYTEN DUYVIL AND PORT MORRIS RAILROAD COMPANY,
Appellant.

A railroad corporation which has parted with the possession and control
of its road under a lease thereof to another corporation, containing a
covenant that the lessee shall keep up the fences, is not liable to one
traveling upon a highway, for damages resulting from an omission of
the lessee to repair a fence which was in good order at the time of the
lease and surrender of possession.

The provision of the general railroad act, as amended in 1854 (chap. 282,
Laws of 1854), imposing upon corporations formed under it the duty of
erecting and maintaining fences on the sides of their roads, does not
apply to fences for the protection of travelers upon a highway.

As to whether the lessor of a railroad who has parted with possession can
be held liable for the negligence of the lessee, under the statute in ques-
tion, in a case where it does apply, *quære.*

*Ditchett* v. *Spuyten Duyvil and Port Morris Railroad Company* (5 Hun, 165)
reversed.

(Argued November 23, 1876; decided December 5, 1876.)

APPEAL from judgment of the General Term of the
Supreme Court in the second judicial department affirming a
judgment in favor of plaintiff, entered upon a verdict.
(Reported below, 5 Hun, 165.)

This action was brought to recover damages for the alleged
negligence of defendant in allowing an excavation, made by
it across a public highway, to remain unguarded and unpro-
tected, thereby causing the death of Richard Ditchett, plain-
tiff's intestate.

Defendant, in constructing its road, made a deep cut or
excavation across a highway in the town of Morrissania,
Westchester county, known as Macomb avenue, and, by the
direction of the board of trustees of the town, who were
clothed with the authority of commissioners of highways,
they erected a bridge on the line of another highway, a short
distance from Macomb avenue. Defendant built a substantial
fence along the line of the excavation, and across said avenue.
In 1871, it leased its road, with the appurtenances, franchises,

etc., to the New York Central and Hudson River Railroad Company for ninety-nine years ; the lessee covenanting to see that the demised property was properly cared for and to surrender in good condition. The lessee took possession under the lease, and has, since that time, had possession and control, operating the road. A section of the fence across Macomb avenue had fallen down, and, as the evidence tended to show, the deceased on a dark night, going along the avenue, went through the opening and fell into the excavation and was killed.

Defendant's counsel requested the court to charge, among other things, that if the jury believed the omission to maintain the fence in question was on the part of defendant's lessee, defendant was not liable. The court refused so to charge, and defendant's counsel excepted. Further facts appear in the opinion.

*Frank Loomis* for the appellant. Defendant was not liable for the neglect of its lessee in suffering the fence to be down. (*Cheetham* v. *Hampson*, 4 T. R., 318 ; *Mayor, etc.,* v. *Corliss*, 2 Sandf., 301 ; *Gwathney* v. *L. Miami R. R. Co.*, 12 Ohio St., 92 ; *Swords* v. *Edgar*, 59 N. Y., 28.)

*J. O. Dykman* for the respondent.

MILLER, J. The main question which arises upon this appeal relates to the liability of the defendant as the original owner of the railroad for the injury sustained by the intestate. The cut into which the intestate fell and was killed was made by the defendant, for the purposes of their railroad, and after it was completed substantial fences were erected along the line of the same. In this condition, while thus protected, the road was leased to the New York Central and Hudson River Railroad Company, and since then that corporation has been in possession of, and used and operated the road. Having the control of the railroad and its franchises at the time of the accident, it was the duty of its officers to keep up the fences

and to guard against accidents, and as lessees and occupants this corporation would be liable for any injury arising from their own negligence and carelessness.   Had an action been brought against this company for an injury sustained by the neglect of its officers, it is difficult to see how it could escape liability, if a proper case had been made out.

The rule is well settled that an action for not repairing fences, by reason whereof another party is injured, can only be maintained against the occupier, and not against the owner of the fee, who is not in possession.   (*Cheetham* v. *Hampson*, 4 Term R., 318 ; *The Mayor, etc.,* v. *Corlies*, 2 Sandf. S. C. R., 301 ; *Sands* v. *Edgar*, 59 N. Y., 28.)

In the case last cited, the doctrine is laid down that while the lessor of premises who leases them when they are already a nuisance, and receives rent, is liable for damages to a stranger happening therefrom, whether the owner be in possession or not, a lessor of premises not *per se* a nuisance, but which becomes so only by the manner in which they are used by the lessee, is not liable therefor.   When the defendant parted with the control and possession of its railroad, the avenue through which the cut was made had been restored to its former condition so far as practicable, fully protected against danger from accident, and by the lease introduced in evidence from the defendant to the New York Central and Hudson River Railroad Company, the lessors were bound to see that the railroad demises, and every thing connected with it was properly cared for, and that the chasm which had been made, was sufficiently guarded.   It was a part of the duty thus assumed, to keep up the fence where the accident happened, and in failing to exercise that due care and caution which the circumstances demanded, the lessee would be liable for negligence which caused an injury to another party.

The defendant had parted with the control and possession of the road and its appurtenances, and was not responsible within the rule laid down for any nuisance which did not exist prior to this period of time.   Another party had taken the place of defendant, and that party alone was liable.

It is true that this defence was not interposed by the answer; but no objection was made upon the trial to the introduction of the lease or other evidence showing who was in the actual possession, and the facts connected therewith. As the evidence referred to bore upon the question arising as to the defendant's liability and negligence, and as the case was tried upon that theory, this defence is fairly presented and entitled to consideration upon this appeal.

The provisions of the general railroad act, which imposes upon corporations formed under the same, the duty of erecting and maintaining fences on the sides of their roads, of the required height and strength, was intended for the protection of passengers on trains, and cattle and other animals named therein, who might be in the adjacent field, and expressly enacts that no corporation shall be required to fence the sides of its road except when necessary to prevent cattle, etc., from getting on the track from lands adjoining the same. (S. Laws of 1854, chap. 282.) This clearly has no application to fences for the protection of persons who may be traveling, or to the fencing of an opening of the character of the one proved. Even if this provision should be held to apply in a proper case, it may well be doubted whether the lessor of a railroad who had parted with the possession could be held liable for the negligence of the lessee under the statute in question. As the defendant was not liable as the original owner, or for the alleged negligence of the lessee, the action cannot be maintained, and the court were in error in denying the motion to dismiss the complaint.

No other question requires comment, and the judgment must be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.