JOHN H. MENUT *vs.* BOSTON AND MAINE RAILROAD.

Essex.    October 17, 1910. — November 21, 1910.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Railroad. Fence. Negligence,* Railroad.    *Statute,* Construction.    *Words, "*Suitable fences."

Review by BRALEY, J., of the statutes and of the decisions of this court with regard to the duty of railroad corporations to maintain fences upon both sides of the entire length of their railroads.

Section 120 of R. L. c. 111, now St. 1906, c. 463, Part II. § 103, which requires every railroad corporation to "erect and maintain suitable fences, with convenient bars, gates or openings therein, upon both sides of the entire length of its railroad," with certain exceptions, imposes no duty upon railroad corporations to prevent, by the maintenance of such fences, the owners of premises adjoining the railroads, or persons rightfully upon such premises, from falling down embankments along the railroads.

The history of St. 1906, c. 463, Part II. § 103, which provides that "every railroad corporation shall erect and maintain suitable fences, with convenient bars, gates or openings therein, upon both sides of the entire length of its railroad," with certain exceptions, requires that the words "suitable fences," therein shall be construed to mean fences suitable to protect the cattle of adjoining landowners and to prevent their intrusion upon the railroad locations; and, if the agricultural conditions which prevailed when the development of the railroad law of the Commonwealth began and for some time afterwards very largely have changed and the statutory regulations relating to the operation of railroads should be made more rigorous, as to places where the population has become increasingly urban and more dense, by the imposing of additional safeguards through the erection of barriers or the prescribing of what shall constitute a lawful fence for the personal safety of those who may live on estates adjoining or in proximity to the railroad location or may use the public ways contiguous and parallel to it, such change should come, not from an alteration in the judicial construction of the statute, but only from further legislation.

TORT for personal injuries.    Writ dated June 3, 1909.

The declaration was in substance as follows:

" And the plaintiff says that the defendant is a corporation owning and operating a railroad in Lynn . . .; that it is the duty of said defendant, and said defendant is required by R. L. c. 111, § 120, to 'erect and maintain suitable fences, with convenient bars, gates or openings therein, upon both sides of the entire length of its railroad except at the crossings of a public way or in places where the convenient use of the road would be thereby obstructed, and except at places where, and so long as, it

is specially exempted from the duty of so doing by the board ' ; yet said defendant, not being exempted from such duty as provided in said § 120, did on or about May 23, 1904, and a long time before that time, carelessly and negligently fail to erect and maintain a fence as provided in said chapter upon the side of its railroad adjoining the premises at or near 52 1-2 Silsbee street in said Lynn ; and said premises not being on a crossing of a public way or a place where the convenient use of the road of the defendants would be obstructed by the erection of a fence as aforesaid, are, and were on or about May 23, 1904, wholly unprovided with any fence as aforesaid ; that on or about May 23, 1904, the plaintiff was lawfully and rightfully upon the premises adjoining the railroad of said defendant situated at or near 52 1-2 Silsbee street in said Lynn, for, by leave of, under, and in the right of the adjoining land owner, and in the employ of and with the consent of said adjoining land owner, in the regular course of his employment by said land owner, and in the course of his business for said land owner ; and that while he was so working on the said premises adjoining the road of the defendant, and while himself in the exercise of due care, he was thrown from a pile of lumber situated on the said premises, and in falling fell over the stone wall of said defendant and on to the ground of the road of said defendant, and was severely injured owing to the negligence of the defendant, its servants, or agents, in failing to erect and maintain a fence on said premises as provided in R. L. c. 111, § 120, which said fence, if erected and maintained, would have caught said plaintiff as he fell from the pile of lumber and prevented his falling over the stone wall to the ground below ; that on or about May 23, 1904, owing to the negligence of the defendant, its servants or agents as aforesaid, and while himself in the exercise of due care, he was severely and permanently injured, and suffered greatly both in body and in mind, and was put to great expense for medicines and medical attendance, all to his damage as alleged."

The defendant demurred, the first ground of demurrer being that "no legal cause of action" was set forth in the declaration. The demurrer was heard by *Dana*, J., who made an order sustaining it. Judgment was entered for the defendant; and the plaintiff appealed.

The case was submitted on briefs.

*E. M. Schwarzenberg & E. F. Schwarzenberg*, for the plaintiff.
*H. F. Hurlburt & D. E. Hall*, for the defendant.

BRALEY, J.  The plaintiff, having no cause of action at common law, seeks to hold the defendant in damages for personal injuries caused by a failure to comply with R. L. c. 111, § 120, that "every railroad corporation shall erect and maintain suitable fences, with convenient bars, gates or openings therein, upon both sides of the entire length of its railroad, except at the crossings of a public way or in places where the convenient use of the road would be thereby obstructed, and except at places where, and so long as, it is specially exempted from the duty of so doing by the board" of county commissioners.  "The corporation shall also construct and maintain sufficient barriers, where it is necessary and practicable so to do, to prevent the entrance of cattle upon the road.  A corporation which unreasonably neglects to comply with the provisions of this . . . section shall, for every such neglect, forfeit not more than two hundred dollars for every month during which the neglect continues; and the Supreme Judicial Court shall have jurisdiction in equity to compel the corporation to comply with such provisions, and, upon such neglect, to restrain and prohibit it from crossing a highway or town way, or from using any land, until such provisions shall have been complied with."  *Rust* v. *Low*, 6 Mass. 90, 93.  *Thayer* v. *Arnold*, 4 Met. 589.  *Eames* v. *Salem & Lowell Railroad*, 98 Mass. 560.  *Baxter* v. *Boston & Worcester Railroad*, 102 Mass. 383.  *Bronson* v. *Coffin*, 108 Mass. 175.  See St. 1906, c. 463, Part II. § 103.

It is not sufficient for the plaintiff to prove that the defendant failed to fence, and if this had been done he would not have been injured, but he must go further and show, that the requirement of the statute was enacted for his benefit.  The inquiry, therefore, is, whether it was the defendant's duty to erect and maintain at the place of the accident a fence which would have been sufficient to have intercepted the plaintiff's fall, and prevented his injuries.  If this is established the further averments of its negligence are admitted by the demurrer.

The language imposing the duty does not define its scope, and to ascertain the proper construction, the statute must be read

with the provisions of the original enactments from which it has been derived. The earlier acts of incorporation contain some provisions for adapting the railroad at the expense of the corporation to the grade of intersecting highways which must be raised or lowered to meet the change in level, and the Sts. of 1833, c. 187, 1834, c. 137, and 1835, c. 148, provided for the assessment of damages if the location was acquired by eminent domain ; and that at grade crossings certain precautions should be taken for the safety of travellers on highways. But no attempt at a general system of statutory law for the construction and operation of railroads appears until the Rev. Sts. c. 39. Mass. Special Laws, Sts. 1829, cc. 93, 94, 95 ; 1830, c. 4 ; 1831, cc. 55, 56, 57, 72 ; 1832, cc. 49, 80, 87 ; 1833, cc. 109, 116, 118 ; 1835, cc. 95, 111 ; 1836, cc. 187, 221, 236, 249, 267. The revision, however, did not require either party to fence, although under the general powers of the county commissioners, by whom damages were assessed, they could direct that instead of an award in money to the landowner for the cost as in the taking of land for a highway, the corporation should provide and maintain the necessary fences. *First Parish in North Bridgewater* v. *Plymouth,* 8 Cush. 475. *Morss* v. *Boston & Maine Railroad,* 2 Cush. 536. *Boston & Worcester Railroad* v. *Old Colony Railroad,* 12 Cush. 605, 608, 609. *Baxter* v. *Boston & Worcester Railroad,* 102 Mass. 383. If money damages were awarded, and the land remained unfenced, besides incurring the danger of injury to his cattle, for which he would have no remedy, the landowner also might be held liable to suit if passing to the track they caused the derailment of trains. *Lyons* v. *Merrick,* 105 Mass. 71, 76. *Lovett* v. *Salem & South Danvers Railroad,* 9 Allen, 557, 562. But if either party was dissatisfied, and applied for a jury the order was vacated, and as the verdict might not require the erection of fences the corporation could not be compelled to act, and the landowner must provide them. It was to guard against such results in the future, as well as to furnish a remedy to " any owner of land heretofore taken," that the St. of 1841, c. 125, was passed. The corporation, in addition to the pecuniary damages assessed upon it, was now required " to construct and maintain such embankments, drains, culverts, walls, fences, or other structures, as said commissioners shall judge rea-

sonable for the security and benefit of such landowners. And in their order, therefore, the commissioners shall prescribe the time within which, and the manner how, such structure shall be made or repaired, which order it shall not be competent for a jury to alter or reverse." *Boston, & Providence Railroad* v. *Doherty,* 154 Mass. 314. By § 4, the commissioners were authorized on " the application of any owner of land heretofore taken " or of the selectmen of the town through which the railroad passed, to require suitable fences to be made and maintained by the corporation, " as well for the benefit and security of such landowner, as of travellers on such railroad," unless the landowner already had received in the assessment of damages full compensation, or had agreed to make and maintain such fence, yet no right is conferred upon the corporation or the commissioners to compel him to fence, although compensated for the outlay, or where the land having been obtained by purchase the price paid was presumed to include the cost of fencing by the grantor. *Morss* v. *Boston & Maine Railroad,* 2 Cush. 536. *Stearns* v. *Old Colony & Fall River Railroad,* 1 Allen, 493. But as the corporation was not required to act unless ordered by the commissioners, and the landowner content with the compensation received could remain quiescent, while passengers might be exposed to great peril during transportation on a partially or wholly unfenced track, the St. of 1846, c. 271, § 3, to do away with this serious danger, directed under a penalty provided by § 4, that " every railroad corporation shall erect and maintain suitable fences with convenient bars, gates, or openings therein, at such places as may reasonably be required, upon both sides of the entire length of any railroad which they may hereafter construct, except at the crossings of any turnpike, highway, or other way, or in places where the convenient use of the railroad would be obstructed thereby. And shall also construct and maintain sufficient barriers, at such places as may be necessary, where it is practicable to do so, to prevent the entrance of cattle upon the railroad." See *Boston & Worcester Railroad* v. *Old Colony Railroad,* 12 Cush. 605, 609. The duty thus imposed was subsequently made enforceable in equity by this court under St. of 1855, c. 350, and these statutes, having been consolidated in Gen. Sts. c. 63, §§ 40 to 43, and the St. of 1874, c. 372, §§ 83, 84, have been uniformly

construed where the road was built prior to April 17, 1841, as requiring the owner to fence if his damages, or the price paid to him where the acquisition was by purchase, included the cost of fencing, and where the road was constructed after May 16, 1846, the corporation fenced the entire length of the railroad on both sides except in places where a fence would obstruct the convenient use of the railroad, or at crossings where the general public had a right of way. *Morss* v. *Boston & Maine Railroad*, 2 Cush. 536. *Stearns* v. *Old Colony Railroad*, 1 Allen, 493. *Boston & Albany Railroad* v. *Briggs*, 132 Mass. 24. The exemption, however, was repealed by the St. of 1879, c. 205, which finally put upon the corporation the absolute and sole duty of maintaining the fence, and where by either law or contract this burden before had been placed on the adjoining landowner, the corporation was required thereafter to erect such fences, or to keep them in repair if they had been erected, and could recover the reasonable cost in an action of contract or by a lien upon the land for the labor and materials. The Pub. Sts. c. 112, § 115, and the R. L. c. 111, § 120, are re-enactments of these provisions, which from the first to the last enactment prescribe neither the dimensions, material or mode of construction, except as may be inferred from the words that it shall be a " suitable fence."

It is common observation, that a railroad often runs through extensive tracts of woodland and unimproved lands, and, as a fence which there might be sufficient to comply with the statute would be wholly insufficient between coterminous owners of lands under cultivation, *Eames* v. *Salem & Lowell Railroad*, 98 Mass. 560, 565, decided, that the fence defined in Gen. Sts. c. 25, § 1, now R. L. c. 33, § 1, was not the standard of requirement. The " security and benefit " of the landowner, and " of travellers on such railroad," having been the words of the statute of 1841, there would seem to be no reasonable ground to question, that, under the original act and subsequent statutes which indicate no change of purpose, a fence sufficient to turn the cattle of those whose lands adjoined the road, was all that the Legislature intended.

The railroad company also in the operation of its trains has the right to the exclusive use of its tracks, and is under no obligation to anticipate the intrusion of cattle which may have

passed unlawfully to the location, even where there has been a neglect to fence or the fence may be insufficient to restrain them, and if injured or destroyed the corporation is not responsible to the owner unless wanton or reckless misconduct of its servants or agents is shown. *Eames* v. *Salem & Lowell Railroad*, 98 Mass. 560. *Maynard* v. *Boston & Maine Railroad*, 115 Mass. 458. *McDonnell* v. *Pittsfield & North Adams Railroad*, 115 Mass. 564. *Darling* v. *Boston & Albany Railroad*, 121 Mass. 118. *Towne* v. *Nashua & Lowell Railroad*, 124 Mass. 101, 104. *Taft* v. *New York, Providence & Boston Railroad*, 157 Mass. 297. The case of *Browne* v. *Providence, Hartford & Fishkill Railroad*, 12 Gray, 55, did not arise under our statute, but as pointed out in *Eames* v. *Salem & Lowell Railroad*, 98 Mass. 560, 564, rested on the construction of a statute of Connecticut, under which suit· had been brought in our courts. See *Isbell* v. *New York & New Haven Railroad*, 27 Conn. 393. This doctrine has been applied to persons, and no distinction has been made in suits for personal injuries by adults, or by plaintiffs of tender years, who have passed or strayed to the tracks through openings in the fence on the side of the railroad which were not shown to have been necessary for its convenient operation, or for crossings to accommodate the public ways, or a place which by implication the public had been invited to use. *Wright* v. *Boston & Maine Railroad*, 129 Mass. 440. *Morrissey* v. *Eastern Railroad*, 126 Mass. 377, 380. *Wright* v. *Boston & Albany Railroad*, 142 Mass. 296. *Chenery* v. *Fitchburg Railroad*, 160 Mass. 211, 213. See *McCarty* v. *Fitchburg Railroad*, 154 Mass. 17. And since the St. of 1853, c. 414, § 4, it has been a misdemeanor for any person without right knowingly to stand or walk on a railroad track. If the erection and maintenance of a fence was also designed for the protection of the public generally, and the failure to fence was the proximate cause of the injury, the plaintiffs were not barred, and as proof of their due care, or of those responsible for his conduct where the plaintiff appears to have been unable to care for himself, would have been all that was necessary to have established the defendant's liability, they should have been permitted to recover. But it is evident from these decisions, that the railroad was not required to assume that trespassers might be on the track or to fence for their protection, and we never have

adopted the view, that, if a trespasser is a child of immature age or so young as to be incapable of caring for himself, the company is called upon to anticipate and discover his presence, although, when discovered, he cannot be injured wilfully, or treated with a reckless disregard for his safety. *Anternoitz* v. *New York, New Haven, & Hartford Railroad*, 193 Mass. 542. Compare *Indianapolis, Peru & Chicago Railway* v. *Pitzer*, 109 Ind. 179.

The plaintiff, however, urges that the demurrer should be overruled and the judgment reversed, because in a few jurisdictions statutes primarily enacted for purposes similar to our own, even if in some instances varying in terms, have been judicially defined as including protection from personal injuries which might be caused to children of tender years who wandered upon the track through the neglect of the corporation to fence. *Keyser* v. *Chicago & Grand Trunk Railway*, 56 Mich. 559. *Isabel* v. *Hannibal & St. Joseph Railroad*, 60 Mo. 475, 484. *Schmidt* v. *Milwaukee & St. Paul Railway*, 23 Wis. 186. *Rosse* v. *St. Paul & Duluth Railway*, 68 Minn. 216. *Chicago, Burlington & Quincy Railway* v. *Grablin*, 38 Neb. 90. See further, *Atchison, Topeka & Santa Fe Railroad* v. *Ressman*, 9 C. C. A. 20; *Hayes* v. *Michigan Central Railroad*, 111 U. S. 228, and *Union Pacific Railroad* v. *McDonald*, 152 U. S. 262. But even in the distinction, the decisions are not harmonious. Some of them are favorably commented upon by Brown, J., in delivering the opinion of a majority of the court in *New York Central & Hudson River Railroad* v. *Price*, 159 Fed. Rep. 330, where a boy six and a half years old ran on to the defendant's unfenced track, receiving injuries from which he died after a period of conscious suffering. The decision turned upon whether our statute required the road to fence against the plaintiff's intestate, and the construction adopted by this court in *Byrnes* v. *Boston & Maine Railroad*, 181 Mass. 322, was followed, and recovery was denied. A child six years old went upon the unfenced track of the defendant, in *Bischof* v. *Illinois Southern Railroad*, 232 Ill. 446; *S. C.* 13 Ann. Cas. 185, and was killed, but after a review by Cartwright, J., of many of the cases, upon which the plaintiff at bar relies, the court held, that under a statute requiring the corporation to erect and maintain a fence sufficient to prevent cattle, horses, sheep, hogs and other stock from getting on the railroad,

the company was not responsible for the death of the plaintiff's intestate. It also has been decided in other jurisdictions that statutes requiring the corporation to fence against live stock should not be construed as requiring it to fence for the protection of persons, whether infants or adults, and where fencing is held as designed for the benefit of the general public it would seem there is no obligation to provide for the safety of those capable of taking care of themselves, and of realizing the peril of being on a railroad track. *Allen* v. *Boston & Maine Railroad*, 87 Maine, 326. *Russell* v. *Maine Central Railroad*, 100 Maine, 406. *Nolan* v. *New York, New Haven, & Hartford Railroad*, 53 Conn. 461, 473. *Cauley* v. *Pittsburgh, Cincinnati & St. Louis Railway*, 95 Penn. St. 398. *Baltimore & Ohio Southwestern Railway* v. *Bradford*, 20 Ind. App. 348. *Cornwall* v. *Sullivan Railroad*, 28 N. H. 161, 165, 166. *Delphia* v. *Rutland Railroad*, 76 Vt. 84. *Schreiner* v. *Great Northern Railway*, 86 Minn. 245, 247. *Cohoon* v. *Chicago, Burlington & Quincy Railway*, 90 Iowa, 169, 173. *Ditchett* v. *Spuyten-Duyvil & Port Morris Railroad*, 67 N. Y. 425. *Lake Shore & Michigan Southern Railway* v. *Liidtke*, 69 Ohio St. 384. *Carper* v. *Norfolk & Western Railroad*, 23 C. C. A. 669; *Carper* v. *Kimball*, 35 L. R. A. 135.

If the building and maintenance of a "suitable fence" which under certain conditions formerly devolved upon the landowner, meant a structure sufficient to protect his cattle, and to prevent their intrusion upon the location, no adequate reason has been suggested by the plaintiff why a different construction should be adopted when this duty is imposed solely upon the corporation, and the obligation so extended as to include a structure sufficient to protect the landholder, or occupier, or their servants, when on the premises, from inadvertently passing, or falling upon the track. It was so decided in principle in the case of *Byrnes* v. *Boston & Maine Railroad*, 181 Mass. 322, 323, which was followed with approval in *Gerry* v. *New York, New Haven, & Hartford Railroad*, 194 Mass. 35, 38. We are not satisfied that these recent cases, to say nothing of those which preceded them, should be overruled, and a radical departure entered upon from that which has been deemed to be the true application and construction of these statutes. If the agricultural conditions which prevailed when the development of our railroad law began, and for

some time afterwards, have very largely changed, and the statutory regulations relating to the operation of railroads should be made more rigorous where the population has become increasingly urban and more dense, by imposing additional safeguards by the erection of barriers, or prescribing what shall constitute a lawful fence, for the personal safety of those who may live on estates adjoining, or in proximity to the line, or use the public ways contiguous and parallel to it, the change should come by further legislation.

The plaintiff having failed to allege any breach of duty by the defendant which it owed to his employer, or to him, the first ground of demurrer was well taken, and the second need not be considered.

*Judgment affirmed.*