MARY BODAY *et al. vs.* N. Y., N. H. & H. R. R. Co.

MARCH 27, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

HAHN, J. This is an action of trespass on the case for negligence brought by the plaintiff, as widow and on behalf of certain children, to recover damages for the death of her husband, hereinafter referred to as the deceased, who was struck and fatally injured by a locomotive of the defendant at Central Falls, Rhode Island, on September 29, 1930. The case is before this court on plaintiffs' exceptions to the exclusion of testimony and to the granting of defendant's motion that the plaintiffs be adjudged nonsuit.

The declaration sets up a long-continued use of the "Tin Bridge," so-called, and defendant's duty to so manage and control its trains as not to injure people walking on the bridge, and alleges that defendant failed in its duty to anticipate the presence of pedestrians and have its train under such control that, if necessary, it could be stopped to prevent injury

At the place of the accident the two tracks of defendant's main line curve to the right northerly towards Boston and are on a private right of way rising twenty-five or thirty feet above the surrounding country and crossing the Blackstone River by means of the said Tin Bridge. This bridge is merely an open trestle above the river and consists of metal girders supporting ties along the ends of which on each side runs a large beam. There is no footway or railing along the bridge, and signs posted there expressly prohibit pedestrians from trespassing thereon.

About one hour after sunset on the night in question, the deceased, leading a dog by a leash, climbed upon the railroad right of way from the Pawtucket end and walked across the trestle to or near the Central Falls end thereof, where he was struck and killed by a Boston-bound express train going about sixty miles per hour. There was testimony that after the train crossed the bridge it stopped, and the conductor with the aid of a lantern discovered the deceased on the Central Falls end of the bridge.

By walking on the defendant's private right of way at a point not a highway or other authorized crossing, the deceased committed a misdemeanor; G. L. 1923, Chap. 397, Sec. 35. In other words, he was a trespasser. It is the generally accepted rule that a railroad company owes no duty to a trespasser or bare licensee on its premises except after discovering his peril; that is to say, there is no duty owed to such persons except to abstain from wilfully or wantonly injuring them. 22 R. C. L. §164; *O'Brien* v. *Union Freight R. R. Co.*, 209 Mass. 449; *Jones* v. *N. Y., N. H. & H. R. R. Co.*, 211 Mass. 521; *Chenery* v. *Fitchburg R. Co.*, 160 Mass. 211. In the latter case it was held that: "As against a bare licensee, a railroad company has a right to run its trains in the usual way, without special precautions, if the circumstances do not of themselves give warning of his probable presence, and he is not seen until it is too late." See also *Murphy* v. *Avery Chemical Co.*, 240 Mass. 150. In *Jones* v. *N. Y., N. H. & H. R. R. Co., supra,* it was held:

"The evidence does not support the contention that the defendant invited the plaintiff to use this crossing. . . . The defendant did not plank the crossing, nor grade its approaches; it maintained no gate or flagman or signs; and did no act which could be construed as an express invitation to the public; and it does not appear that it knew that the crossing was being used by any persons except those who were entitled to do so of right. Nor was there any implied representation by the defendant to the plaintiff that the way was one which might be used with safety, or an inducement to use it as such. . . . When the plaintiff, for his own convenience, undertook to pass through this private way as a short cut . . . he was at most a bare licensee and used the premises at his own risk . . . ."

In the instant case there is no evidence of wanton, wilful or reckless conduct on the part of defendant's employees towards plaintiffs' intestate. In view of the prohibiting signs posted by the company near the bridge, and the unsuitability of the bridge structure itself for any but train traffic, railroad trainmen would have the right to presume that there would be no trespassers upon either the bridge or the railroad right of way in general, and the railroad would not be liable if the presence of the trespasser first became known when a collision was unavoidable; *Falchetti* v. *Penna. R. R. Co.*, 160 Atl. 859. There is no evidence that the engineer could have seen the plaintiff's intestate on the track or could have stopped the train in time to avoid the accident. As there is no evidence which warranted a finding of negligence on the part of the defendant, the trial justice rightly granted defendant's motion that the plaintiffs be adjudged nonsuit. Their exception to this ruling is overruled.

Plaintiffs further excepted to the refusal to allow replies to questions asked witnesses by plaintiffs' counsel for the purpose of showing that other pedestrians had walked back and forth across the bridge for a number of years. This exception is without merit. The rule is well stated in 33

Cyc. 921: "The mere fact that a number of persons are in the habit of using a certain place as a crossing where there is no public right of passage does not constitute such place a public crossing or generally confer upon such persons a character or right other than that of trespassers." See also *Conn* v. *Penna. R. Co.*, 136 Atl. 779. These exceptions are overruled.

All plaintiffs' exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment on the nonsuit.

*Thomas L. Carty*, for plaintiff.

*Eugene J. Phillips*, for defendant.

